IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:25-CV-00031-KDB

| | |
|---|---|
| LEAH MCINTOSH,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff Leah McIntosh's appeal of an unfavorable administrative decision denying her applications for disability insurance benefits and supplemental security income under the Social Security Act. Doc. Nos. 1, 7. Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, the Court finds this matter should be remanded to allow the ALJ to reconsider his decision that the claimant is not disabled under the relevant sections of the Act, including whether absenteeism limitations should be a part Plaintiff's residual functional capacity as discussed below. Accordingly, the Court will **REVERSE** the Commissioner's decision, and **REMAND** this matter for further proceedings consistent with this Order.

### I. PROCEDURAL BACKGROUND

On July 15, 2022, Ms. McIntosh applied for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act, alleging that she had been disabled since November 1, 2019. Doc. No. 5-2 at 26. Ms. McIntosh's claim was denied initially and upon reconsideration. *Id.* Ms. McIntosh then requested a hearing before an

1

Administrative Law Judge ("ALJ"), where she was represented by counsel. *Id.* After conducting the hearing, ALJ Benjamin Burton denied Ms. McIntosh's application in a decision dated June 6, 2024. *Id.* at 40. The Appeals Council denied Ms. McIntosh's request for review; thus, the ALJ's determination stands as the final decision of the Commissioner. *See* Doc. No. 5-2 at 16. Ms. McIntosh now timely seeks judicial review under 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process ("SEP") established by the Social Security Administration ("SSA") to determine whether Ms. McIntosh was disabled under the law during the relevant period.[1] At step one, the ALJ found that Ms. McIntosh had not engaged in substantial gainful activity[2] since the alleged onset date ("AOD") (20 C.F.R. §§ 404.1571, et seq., 416.971 et seq.) and at step two that she had the following severe impairments: "C[roh]n's disease, scoliosis, depressive disorder, and generalized anxiety" (20 C.F.R. §§ 404.1520(c) and 416.920(c)). Doc. No. 5-2 at 29. At step three, the ALJ found that none of Ms. McIntosh's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d) and 416.926). *Id.* at 30.

---

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but under step five the Commissioner must prove the claimant can perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

[2] Although Ms. McIntosh worked after the alleged onset date, the work activity "did not rise to the level of substantial gainful activity." Doc. No. 5-2 at 29.

Before proceeding to step four, the ALJ determined that Ms. McIntosh had the following residual functional capacity ("RFC"):

> to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except they can concentrate, persist, and maintain pace on simple and detailed, but not complex, tasks for 2 hours. They may have frequent contact with the public, coworkers, and supervisors, no fast-paced tasks with strict production quotas, but variable-paced tasks with end of the day production would be acceptable. Finally, they may not supervise or manage the work of others.

*Id.* at 31-32.

At step four, the ALJ found that Ms. McIntosh was able to perform past relevant work as a sales route driver and receptionist. *Id.* at 38. The ALJ also noted that in addition to her past relevant work, other jobs existed in substantial numbers in the national economy that Ms. McIntosh could perform, including cafeteria helper, hand packager, and laundry worker. *Id.* at 39. Thus, the ALJ found that Ms. McIntosh was not disabled under the Social Security Act from November 1, 2019, through the date of his decision. *Id.*

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604-05 (4th Cir. 2025); *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 98-99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[3] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). "This isn't a high threshold." *Drumgold*, 144 F.4th at 604. Accordingly, this Court does not review a final decision of the Commissioner *de novo, Metcalf v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Drumgold*, 144 F.4th at 604; *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting

---

[3] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*. (citation modified); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

### IV. DISCUSSION

Ms. McIntosh asks the Court to overturn the ALJ's finding of no disability or, alternatively, to remand her case, arguing that the ALJ erred by failing to "evaluate the effects of Plaintiff's frequent medical treatment on her absenteeism when assessing the RFC," thereby rendering the decision unsupported by substantial evidence. Doc. No. 7 at 3. She specifically contends that the frequency of medical treatment required to manage her conditions was work preclusive, as it involved "several treatment visits per month." *Id.* In support, Ms. McIntosh points to the vocational expert ("VE") testimony during the hearing, which stated "employers would expect no more than one absence per month," when asked about absenteeism. *Id.* at 7, 91. Despite this apparent conflict, Ms. McIntosh alleges that the ALJ failed to include an absenteeism limitation in the RFC or to explain its omission when assessing her ability to work. *See id.* at 22.

In his decision, the ALJ characterized Ms. McIntosh's treatment for Crohn's disease as "sporadic and infrequent," and acknowledged her participation in group therapy, individual

5

therapy, and a support group for her mental health conditions. Doc. No. 5-2 at 35. While the ALJ addressed the potential impact of Crohn's disease on Ms. McIntosh's ability to work, citing "infrequent treatment," one brief hospitalization, and a "lack of evidence documenting the need for frequent emergency room visits or extended hospital stays," he did not directly evaluate the recurring nature of her mental health treatments. *Id.* at 35. Apart from her three-month enrollment in a substance abuse outpatient intensive therapy program, Defendant reports that Ms. McIntosh's individual and group therapy sessions, conducted both in-person and via telehealth between May 2022 and September 2023, occurred at an "approximate frequency of [1.1 to] 1.6 appointments per week." *Id.* at 2, 4.

S.S.R. 96-8p instructs an ALJ to evaluate all relevant evidence in the record, including "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (*e.g.*, frequency of treatment, duration, disruption of routine, side effects of medication)." *Baker v. Bisignano*, No. 7:24-CV-553-M-BM, 2025 WL 2434973, at *6 (E.D.N.C. Aug. 8, 2025), *report and recommendation adopted,* No. 7:24-CV-00553-M-BM, 2025 WL 2432190 (E.D.N.C. Aug. 22, 2025) (quoting S.S.R. 96-8p, 1996 WL 374184, at *5). Ms. McIntosh cites *Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903 (4th Cir. Apr. 14, 2023) as a relatively recent example in which the Fourth Circuit remanded an ALJ's decision for failing to address a claimant's absenteeism. *See* Doc. No. 10 at 9-10. In *Dennis,* the Fourth Circuit emphasized that "[t]here is evidence supporting [the claimant's] need to miss work in the administrative record, and the ALJ's decision does not discuss this evidence, nor does the ALJ's decision adequately explain why the evidence should be rejected." *Baker,* 2025 WL 2434973, at *7 (quoting *Dennis*, 2023 WL 2945903, at *5). The Court of Appeals found the ALJ's denial deficient because it failed to specifically address "(1) the frequency of Dennis' medical treatment, (2) how the frequency of

6

Dennis' medical treatment would impact absenteeism, or (3) how Dennis' frequent medical treatment would impact the VE's testimony that missing more than 7 to 10 days per year "would be subject to firing." *Dennis*, 2023 WL 2945903, at 5.

Here, Defendant likewise fails to articulate how the ALJ reconciled the VE's testimony—that Ms. McIntosh could be absent up to once per month and still be employable—with evidence showing that Ms. McIntosh's therapy appointments resulted in time away from work 1.1-1.6 times per week. *See* Doc. No. 10 at 2-3. Nor has Defendant cited any authority that contradicts the Fourth Circuit's holding in *Dennis,* which makes clear that when faced with a "history of frequent and extensive medical visits[, suggestive of work-preclusive absenteeism based on the VE's testimony] ... the ALJ must discuss the record evidence regarding the frequency of [the claimant's] need for medical treatment and how [the claimant's] absenteeism affects her ability to work." *Dennis*, 2023 WL 2945903, at *6.

Thus, because the ALJ failed to evaluate the impact of Ms. McIntosh's therapy-related absences on her ability to maintain employment (whether by including an absenteeism limitation or explaining why he did not include one), his decision is not supported by substantial evidence. As a result, the Court is unable to conduct meaningful judicial review. *See Patterson v. Comm'r of Soc. Sec. Admin.,* 846 F.3d 656, 663 (4th Cir. 2017) (failure of the ALJ to "show his work" rendered the decision unreviewable).

Accordingly, the Court will **REVERSE** the Commissioner's ruling and **REMAND** to the ALJ for consideration of whether Ms. McIntosh's therapy appointments impact her ability to work.[4]

---

[4] To be clear, the Court expresses no opinion as to whether Ms. McIntosh does or does not require additional limitations based on her absenteeism or otherwise. The Court only seeks to

7

# I. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

The Commissioner's decision denying Plaintiff's application for disability and other benefits is **REVERSED.** This matter is **REMANDED** to the ALJ for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 18, 2025

*/s/ Kenneth D. Bell*
Kenneth D. Bell
United States District Judge

---

ensure that the ALJ properly considers the relevant evidence and fully explains his decisions. On remand, the ALJ should discuss the record evidence regarding the frequency of Ms. McIntosh's attendance at individual and group therapies and how it affects her ability to work. The ALJ should make findings and provide sufficient explanation in order to permit meaningful judicial review for substantial evidence, if necessary.